# In the United States Court of Federal Claims

Bid Protest
No. 18-659C
Filed Under Seal: July 23, 2018
Reissued For Publication: July 26, 2018[*]

|  |  |  |
|---|---|---|
| VETERANS ELECTRIC, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Pre-Award Bid Protest; Judgment Upon |
| v. | ) | The Administrative Record; RCFC 52.1; |
| | ) | Injunctive Relief; Standing. |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*Andrew R. Newell*, Counsel of Record, Whitcomb, Selinsky, McAuliffe P.C., Denver, CO, for plaintiff.

*Christopher L. Harlow*, Trial Attorney, *Deborah A. Bynum*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Chad A. Readler*, Acting Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC; *Brian R. Reed*, Procurement Counsel, Office of General Counsel, United States Department of Veterans Affairs, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.   INTRODUCTION

In this pre-award bid protest matter, Veterans Electric, LLC ("Veterans Electric") challenges the United States Department of Veterans Affairs' (the "VA") decisions to cancel a request for quotations for a contract to provide a nurse call/code blue system at the VA's Medical Center located in Madison, Wisconsin (the "Nurse Call Contract") and to re-solicit the Nurse Call Contract as a total small business set-aside contract. *See generally* Compl.  As relief,

---

[*] This Memorandum Opinion and Order was originally filed under seal on July 23, 2018 (docket entry no. 22).  The parties were given an opportunity to advise the Court, by August 10, 2018, of their views with respect to what information, if any, should be redacted.  On July 25, 2018, the parties informed the Court that no redactions were required (docket entry no. 24).  And so, the Court reissues the Memorandum Opinion and Order, dated July 23, 2018, without any redactions.

Veterans Electric requests, among other things, that the Court enjoin the VA from moving forward with the re-solicitation of the contract and direct the VA to award the contract to Veterans Electric. *Id.* at Prayer For Relief.

The government has moved to dismiss this matter upon the ground that Veterans Electric lacks standing to bring this bid protest action, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). *See generally* Def. Mot. The parties have also filed cross-motions for judgment upon the administrative record on the merits of Veterans Electric's claims, pursuant to RCFC 52.1. *See generally id.*; Pl. Mot. Veterans Electric has also filed motions for a temporary restraining order and for a preliminary injunction. *See generally* Pl. Mot. for TRO and Inj. For the reasons set forth below, the Court: (1) **GRANTS** the government's motion to dismiss; (2) **DENIES** as moot the parties' cross-motions for judgment upon the administrative record; (3) **DENIES** Veterans Electric's motions for a temporary restraining order and for a preliminary injunction; and (4) **DISMISSES** the complaint.

## II.   FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.   Factual Background

In this pre-award bid protest matter, Veterans Electric challenges the VA's decisions to cancel a request for quotations for a contract to provide a nurse call/code blue system at the VA's Medical Center located in Madison, Wisconsin and to re-solicit the Nurse Call Contract as a total small business set-aside contract. *See generally* Compl. Specifically, Veterans Electric alleges that the VA had no justification for cancelling the original solicitation for the Nurse Call Contract and re-soliciting the contract, because the agency received one acceptable offer from Veterans Electric pursuant to the original solicitation. *Id.* at 7.

Veterans Electric also alleges that the VA erred in determining that Veterans Electric's proposed price for the Nurse Call Contract was unreasonable and that the VA improperly relies upon *post hoc* rationalizations to justify the decision to cancel and re-solicit the contract. *Id.* at 7-8. As relief, Veterans Electric requests, among other things, that the Court enjoin the VA from

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the administrative record ("AR"); the complaint ("Compl."); and the government's motion to dismiss and cross-motion for judgment upon the administrative record ("Def. Mot."). Except where otherwise noted, all facts recited herein are undisputed.

2

moving forward with the re-solicitation of the contract and direct the VA to award the contract to Veterans Electric. *Id.* at Prayer for Relief.

### 1. The RFQ And The Nurse Call Contract

The key facts in this bid protest matter are undisputed. Veterans Electric is a service-disabled veteran-owned small business ("SDVOSB") and an electrical contractor with its principal offices located in Wisconsin. *Id*. at 2-3.

On November 16, 2017, the VA issued Request for Quotation No. 36C25218Q0112 (the "RFQ") seeking quotes for the Nurse Call Contract. *See generally* AR Tab 3. Pursuant to the terms of the RFQ, the Nurse Call Contract involves the installation of a new nurse call/code blue system, brand name Ascom Telligence ("ASCOM"), to replace the existing nurse call/code blue system for the 7th floor of the William S. Middleton VA Medical Center. AR Tab 2 at 9-10; *see also* AR Tab 3 at 44-45.

The installation services for the Nurse Call Contract involve the removal of the existing nurse call devices, cabling, and equipment, and the installation of a new nurse call system that would connect to the existing nurse call system currently in use on other floors at the medical center. AR Tab 6 at 87. ASCOM is the sole manufacturer of the Ascom Telligence nurse call/code blue system and ASCOM owns the proprietary rights for this system. AR Tab 26 at 213 n.2. A small business known as MasterCom is the authorized distributor for ASCOM in the Milwaukee and Madison, Wisconsin areas. *Id*.; *see also* AR Tab 21 at 187.

Prior to issuing the RFQ, the VA approved a justification for the acquisition of the ASCOM nurse call/code blue system pursuant to Federal Acquisition Regulation ("FAR") § 13.106-1, which governs the government's use of single sole source brand name purchases not exceeding $150,000.00. *See generally* AR Tab 4. The VA estimated the value of the Nurse Call Contract to be $148,354.00, based upon an independent government cost estimate ("IGCE"). AR Tab 4 at 81.

The VA also conducted market research to identify potential sources under the North American Industry Classification System code ("NAICS Code") applicable to the Nurse Call Contract. AR Tab 10 at 123-24. In connection with this market research, the VA issued a sources sought notice on the Federal Business Opportunities website to determine the interest

and capability of potential vendors, including SDVOSB companies. *Id.* at 123; *see generally* AR Tab 11.

In addition, the VA conducted internet searches of government databases—such as the Vendor Information Pages database of businesses approved to participate in the VA's veteran-owned small business program—and government-maintained catalogues to identify potential sources under the applicable NAICS Code. AR Tabs 30a-30c; *see also* 38 C.F.R. § 74.1. Two SDVOSB vendors—Veterans Electric and Rone Communications—responded to the VA's sources sought notice for the Nurse Call Contract. AR Tab 10 at 124. Because the VA concluded that there was a reasonable expectation of receiving quotations from these two vendors, the agency issued the RFQ on November 16, 2017, as a total SDVOSB set-aside. *Id.*; *see generally* AR Tab 3.

The RFQ provides that the VA would issue a fixed-price order to the vendor submitting the lowest-priced, technically acceptable quotation. *See* AR Tab 3 at 44. Specifically relevant to this bid protest dispute, the statement of work ("SOW") for the RFQ contains specific qualification requirements for the successful awardee and provides that:

> The Contractor shall submit certified documentation that they have been an authorized distributor and service organization for the Original Equipment Manufacturer (OEM) for a minimum of three (3) years. The Contractor shall be authorized by the OEM to pass thru the OEM's warranty of the installed equipment to VA. In addition, the OEM and Contractor shall accept complete responsibility for the design, installation, certification, operation, and physical support for the System. This documentation, along with the System Contractor and OEM certifications must be provided in writing as part of the Contractor's Technical submittal.

AR Tab 6 at 88.

On November 21, 2017, Veterans Electric and MasterCom participated in a site visit to the William S. Middleton VA Medical Center. *See* Compl. at 4; Def. Mot. at 5; *see also* AR Tab 3 at 44. On November 28, 2017, the VA issued an amendment to the RFQ to answer questions received and to extend the closing date for the submission of quotes to December 4, 2017. *See generally* AR Tab 18.

4

On December 4, 2017, Veterans Electric timely submitted a quote in response to the RFQ. *See generally* AR Tab 33. Veterans Electric's quote was the only quote that the VA received. AR Tab 10 at 124.

In its quote, Veterans Electric proposed a total offered price of $234,000.00. AR Tab 33 at 305. After reviewing Veterans Electric's quote, the VA concluded that it could not determine if Veterans Electric's proposed price was fair and reasonable because the proposed price was approximately 55% higher than the IGCE. AR Tab 10 at 124-25. And so, the VA's contracting officer decided to cancel the SDVOSB set-aside solicitation and to open the solicitation for the Nurse Call Contract to other categories of small business concerns. *Id*. at 125.

In reaching this determination, the VA's contracting officer considered whether there was a reasonable expectation that quotes would be received from two or more veteran-owned small businesses ("VOSBs") and that award could be made at a fair and reasonable price. *Id*. The VA's contracting officer ultimately concluded that it was not likely that quotes would be received from two or more VOSBs and that award could be made at a fair and reasonable price, because the VA had not identified any VOSB companies—other than Veterans Electric and Rone Communications—during its market research for the Nurse Call Contract. *Id.* The VA's contracting officer recognized, however, that the VA's market research indicated that there were at least two small business concerns—Veterans Electric and MasterCom—that would be likely to submit quotes for the Nurse Call Contract. *Id.* And so, he cancelled the SDVOSB set-aside solicitation and opened the procurement for the Nurse Call Contract to other categories of small business concerns. *Id.*

### 2. The Re-Solicitation

On December 28, 2017, the VA reissued the solicitation for the Nurse Call Contract, RFQ No. 36C25218Q0382, as a small business set-aside, rather than as an SDVOSB or VOSB set-aside. AR Tab 2 at 6. On this same day, the VA's contracting officer notified Veterans Electric that the agency had decided to re-solicit its requirements for the Nurse Call Contract as a small business set-aside. AR Tab 7 at 105.

On December 29, 2017, Veterans Electric contacted the VA to request an explanation for the agency's decision to cancel the original SDVOSB solicitation and to re-solicit the contract as a small business set-aside rather than as an SDVOSB set-aside. *Id*. In response to Veterans

Electric's inquiry, the VA's contracting officer responded that the agency changed its acquisition strategy and re-solicited the contract as a small business set-aside because the contracting officer could not determine the reasonableness of Veterans Electric's proposed price. *Id.*

### 3. The GAO Protest

On January 4, 2018, Veterans Electric submitted a timely protest of the VA's decisions to cancel the original solicitation for the Nurse Call Contract and to re-solicit this contract as a small business set-aside to the United States Government Accountability Office (the "GAO"). *See generally* AR Tab 1. After the VA filed a motion to dismiss the protest, the GAO dismissed Veterans Electric's protest on April 12, 2018. *See* AR Tab 26 at 217-18; *see generally* AR Tab 20.

Thereafter, Veterans Electric commenced this litigation on May 9, 2018. *See generally* Compl.

### B. Procedural Background

On May 9, 2018, Veterans Electric filed the complaint in this bid protest matter and motions for a temporary restraining order and for a preliminary injunction. *See generally* Compl.; Pl. Mot. for TRO and Inj. On May 11, 2018, the Court entered a Protective Order. *See generally* Protective Order.

On May 18, 2018, the government filed the administrative record. *See generally* AR. On May 25, 2018, Veterans Electric filed a motion for judgement upon the administrative record. *See generally* Pl. Mot.

On June 1, 2018, the government filed a motion to dismiss, a cross-motion for judgment upon the administrative record, and a response and opposition to Veterans Electric's motion for judgment upon the administrative record. *See generally* Def. Mot. On June 8, 2018, Veterans Electric filed a response and opposition to the government's motion to dismiss and cross-motion for judgment upon the administrative record, and a reply in support of its motion for judgment upon the administrative record. *See generally* Pl. Resp. On June 15, 2018, the government filed a reply in support of its motion to dismiss and cross-motion for judgment upon the administrative record. *See generally* Def. Reply.

These matters having been fully briefed, the Court resolves the pending motions.

## III. LEGAL STANDARDS

### A. Bid Protest Jurisdiction

The Tucker Act grants the United States Court of Federal Claims jurisdiction over bid protests brought by "an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). This Court reviews agency actions in bid protest matters under the "arbitrary and capricious" standard. *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of review set forth in the Administrative Procedure Act). And so, under the Administrative Procedure Act's standard, an award may be set aside if "'(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). In this regard, the Federal Circuit has explained that:

> When a challenge is brought on the first ground, the test is whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis. When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.

*Id.* at 1351 (internal citations omitted).

In reviewing an agency's procurement decision, the Court also recognizes that the agency's decision is entitled to a "presumption of regularity." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) (citations omitted). In addition, the Court should not substitute its judgment for that of the agency. *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997). And so, "'[t]he protestor must show by a preponderance of the evidence that the agency's actions were either without a reasonable basis or in violation of applicable procurement law.'" *Gentex Corp. v. United States*, 58 Fed. Cl. 634, 648 (2003) (quoting *Info. Tech. & Applications Corp. v. United States*, 51 Fed. Cl. 340, 346 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003)).

This standard "is highly deferential." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). As long as there is "a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion . . . ." *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (citation omitted). But, if "the agency entirely fail[s] to consider an important aspect of the problem [or] offer[s] an explanation for its decision that runs counter to the evidence before the agency," then the resulting action lacks a rational basis and, therefore, is defined as "arbitrary and capricious." *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)) (internal quotation marks omitted).

### B.    Standing

Standing is a threshold issue which implicates the Court's subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). And so, if a plaintiff cannot establish standing, the Court is without jurisdiction to render a decision on the merits of a claim. *Myers Investigative & Sec. Servs. v. United States*, 275 F.3d 1366, 1369-70 (Fed. Cir. 2002).

Under the Tucker Act, the Court has jurisdiction over "an action by an interested party objecting . . . to an alleged violation of a statute or regulation with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). In evaluating who qualifies as an interested party with standing to bring a bid protest claim, the Court looks to the definition of "interested party" set forth in the Competition in Contracting Act. *Myers*, 275 F.3d at 1370 (quoting *Am. Fed'n of Gov't Employees v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001)); *see* 31 U.S.C. § 3551(2). To have standing, a plaintiff must show that: "'it [(1)] is . . . an actual or prospective bidder and [(2)] . . . has a direct economic interest' in the procurement or proposed procurement." *Diaz v. United States*, 853 F.3d 1355, 1358 (Fed. Cir. 2017) (alterations original) (quoting *Digitalis Educ. Sols., Inc. v. United States*, 664 F.3d 1380, 1384 (Fed. Cir. 2012)); *see also* 31 U.S.C. § 3551(2).

In determining the second prong of standing—whether a plaintiff has a "direct economic interest" in the procurement—the Court generally applies the "substantial chance test," and inquires as to whether a plaintiff would have had a substantial chance of winning the contract, but for the alleged error in the procurement. *Orion Tech., Inc. v. United States*, 704 F.3d 1344,

8


1348-49 (Fed. Cir. 2013). The Federal Circuit has held that in certain pre-award bid protest matters involving a challenge to the terms of a solicitation, the Court may apply a different test to determine direct economic interest, namely, whether the plaintiff has a "non-trivial competitive injury which can be addressed by judicial relief." *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1362 (Fed. Cir. 2009). This standard may apply when circumstances provide insufficient facts to determine whether a plaintiff had a substantial chance of an award. *Id.* at 1361. But, as the Federal Circuit recognized in *Orion*, the "non-trivial competitive injury" test applies when there is a challenge to a solicitation before the award. *Orion*, 704 F.3d at 1348-49. And so, this test does not necessarily apply to all pre-award bid protests. *Id*.

### C. Judgment Upon The Administrative Record

Generally, RCFC 52.1 limits this Court's review of an agency's procurement decision to the administrative record. RCFC 52.1; *see Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009) ("[T]he focal point for judicial review should be the administrative record already in existence."). And so, unlike a summary judgment motion brought pursuant to Rule 56, "the existence of genuine issues of material fact does not preclude judgment upon the administrative record" under RCFC 52.1. *Tech. Sys., Inc. v. United States*, 98 Fed. Cl. 228, 242 (2011) (citations omitted); RCFC 56. Rather, the Court's inquiry is whether, "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006).

### D. Injunctive Relief

Under its bid protest jurisdiction, the Court "may award any relief [it] considers proper, including declaratory and injunctive relief . . . ." 28 U.S.C. § 1491(b)(2); *see also Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009). In deciding whether to issue a permanent injunction, the Court "considers: (1) whether . . . the plaintiff has succeeded upon the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief." *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing *Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show

a likelihood of success on the merits rather than actual success.")); *see also Centech Grp., Inc.*, 554 F.3d at 1037. In this regard, the United States Court of Appeals for the Federal Circuit has held that:

> No one factor, taken individually, is necessarily dispositive. If a preliminary injunction is granted by the trial court, the weakness of the showing regarding one factor may be overborne by the strength of the others. If the injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial.

*FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993) (citations omitted).

A plaintiff who cannot demonstrate actual success upon the merits cannot prevail upon a motion for permanent injunctive relief. *Cf. Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.*, 357 F.3d 1319, 1325 (Fed. Cir. 2004) (finding that a plaintiff who cannot demonstrate likely success upon the merits cannot prevail upon its motion for preliminary injunctive relief). This Court has also found success upon the merits to be "the most important factor for a court to consider when deciding whether to issue injunctive relief." *Dellew Corp. v. United States*, 108 Fed. Cl. 357, 369 (2012) (citing *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1312 (Fed. Cir. 2007)). However, while success upon the merits is necessary, it is not sufficient alone for a plaintiff to establish that it is entitled to injunctive relief. *See Contracting, Consulting, Eng'g LLC v. United States*, 104 Fed. Cl. 334, 353 (2012) ("Although plaintiff's entitlement to injunctive relief depends on its succeeding on the merits, it is not determinative because the three equitable factors must be considered, as well." (citations omitted)).

### IV.     LEGAL ANALYSIS

The government has moved to dismiss Veterans Electric's challenge to the VA's decisions to cancel the solicitation for the Nurse Call Contract and to re-solicit the contract as a small business set-aside upon the ground that Veterans Electric is not an interested party with standing to bring this matter. *See generally* Def. Mot. Veterans Electric counters in its response and opposition to the government's motion to dismiss that it has standing to bring this protest, because Veterans Electric could meet the solicitation's requirement that the contractor for the Nurse Call Contract has been an authorized distributor and service organization for ASCOM for a minimum of three years. Pl. Resp. at 3-6.

The parties have also filed cross-motions for judgment upon the administrative record upon the issue of whether the VA's decisions to cancel and re-solicit the Nurse Call Contract were reasonable and in accordance with applicable law. *See generally* Pl. Mot.; Def. Mot. In this regard, Veterans Electric argues that the VA irrationally reached these decisions because: (1) Veterans Electric submitted a reasonably priced offer in response to the original solicitation; (2) the VA was required to make an award under that solicitation pursuant to 38 U.S.C. § 8127(d) and 48 C.F.R. § 19.1405(c); and (3) the VA's new solicitation contains several defects. Pl. Mot. at 13-24. The government counters that the VA appropriately decided to cancel and re-solicit the solicitation for the Nurse Call Contract because the VA did not receive any acceptable responses to the RFQ from service-disabled veteran-owned small businesses during the original solicitation. Def. Mot. at 11-13. And so, the government requests that the Court sustain the VA's decisions. *Id*. Lastly, Veterans Electric has filed motions for a preliminary injunction and a temporary restraining order. *See generally* Pl. Mot. for TRO and Inj.

For the reasons set forth below, the Court: (1) **GRANTS** the government's motion to dismiss; (2) **DENIES** as moot the parties' cross-motions for judgment upon the administrative record; (3) **DENIES** Veterans Electric's motions for a temporary restraining order and a preliminary injunction; and (4) **DISMISSES** the complaint.

        **A.**    **Veterans Electric Lacks Standing To Bring This Matter**

As a threshold matter, the administrative record makes clear that Veterans Electric lacks standing to pursue this bid protest matter because it is not qualified to compete for the Nurse Call Contract. And so, for the reasons discussed below, the Court grants the government's motion to dismiss and dismisses this matter for lack of subject-matter jurisdiction. RCFC 12(b)(1).

In its motion to dismiss, the government argues that Veterans Electric lacks standing to bring this bid protest matter because Veterans Electric does not meet the requirement in the RFQ's statement of work that the contractor for the Nurse Call Contract must have been an authorized distributor and service organization for ASCOM for a minimum of three years. Def. Mot. at 10-11. And so, the government contends that the Court should dismiss this bid protest matter because Veterans Electric is a "facially unqualified offeror" under the original solicitation and the re-solicitation for this contract. *Id*. at 10.

It is well-established that to demonstrate standing, Veterans Electric must show that it: (1) is an actual or prospective bidder and (2) has a direct economic interest in the procurement or proposed procurement. *Diaz v. United States*, 853 F.3d 1355, 1358 (Fed. Cir. 2017); *see also* 31 U.S.C. § 3551(2). Because there is no dispute that Veterans Electric submitted a quote in response to the RFQ for the Nurse Call Contract, the Court examines whether Veterans Electric has a "direct economic interest" in the procurement for this contract. *See generally* AR Tab 33.

The United States Court of Appeals for the Federal Circuit has held that the Court applies the "substantial chance test" to determine whether Veterans Electric has a "direct economic interest" in the procurement for the Nurse Call Contract. *Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1348-49 (Fed. Cir. 2013) (holding that generally, a party must show that it had a substantial chance of winning the contract to prove the existence of a direct economic interest); *see also Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2009).[2] This Court has also held that when a plaintiff challenges the government's decision to cancel a solicitation—as is the case here—the plaintiff must show that it had a substantial chance of receiving the contract award but for the cancellation, to establish standing. *See Madison Servs., Inc. v. United States*, 90 Fed. Cl. 673, 676-77, 680 (2009). Veterans Electric fails to make such a showing in this case.

A review of the administrative record shows that Veterans Electric would not have a substantial chance of being awarded the Nurse Call Contract, but for the VA's decision to cancel the original solicitation, because it is not qualified to compete for this contract. Specifically, the SOW for the Nurse Call Contract provides that:

> The Contractor shall submit certified documentation that they have been an authorized distributor and service organization for the Original Equipment Manufacturer (OEM) for a minimum of three (3) years. . . . This documentation, along with the System Contractor and OEM certifications must be provided in writing as part of the Contractor's Technical submittal.

AR Tab 6 at 88; *see also* AR Tab 2 at 23; AR Tab 3 at 59. And so, the plain language of the SOW for the Nurse Call Contract makes clear that the awardee of this contract must have been

---

[2] An exception to this standard is when a prospective bidder challenges the terms of the solicitation prior to submitting a bid. *See Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1348 (Fed. Cir. 2013). In that circumstance, the protestor may establish standing by showing that it suffered a non-trivial competitive injury which can be redressed by judicial relief. *Id.*

an authorized ASCOM distributor and service organization for at least three years. AR Tab 6 at 88; *see also* AR Tab 2 at 23; AR Tab 3 at 59.

Veterans Electric readily acknowledges that it does not meet this requirement. Pl. Mot. at 3. And so, there is no genuine dispute that Veterans Electric did not, and cannot, satisfy the RFQ's requirement regarding contractor qualifications.

Veterans Electric's inability to meet the contractor qualifications for the RFQ deprives it of standing to bring this action. In *Dismas Charities, Inc. v. United States*, 75 Fed. Cl. 59 (2007), this Court held that a disappointed bidder who submitted a proposal that did not comply with the solicitation's requirements lacked standing to pursue its bid protest, because the bidder had no chance of receiving the award. *Id.* at 61-62. Notably, the Court reached this conclusion even though the government evaluated the proposal on the merits and never explicitly stated that the proposal did not comply with the solicitation. *Id.*

Similarly here, the record evidence shows that Veterans Electric submitted a quote that did not conform to the solicitation's requirement that Veterans Electric must have been an ASCOM distributor and service organization for at least three years, even though the VA evaluated Veterans Electric's quote on the merits. *See generally* AR Tab 33. The record evidence also shows that the requirement to be an ASCOM distributor and service organization for at least three years applies to the VA's re-solicitation of the Nurse Call Contract. *See* AR Tab 2 at 23; AR Tab 6 at 88. Given this, the record evidence makes clear that Veterans Electric is not qualified to compete for the award of the Nurse Call Contract pursuant to either the original solicitation or the re-solicitation for this contract. And so, Veterans Electric has not shown that it had a substantial chance of being awarded the Nurse Call Contract, but for the VA's decisions to cancel and re-solicit this contract. *Madison Servs.*, 90 Fed. Cl. at 676-77, 680.

The Court is also unpersuaded by Veterans Electric's arguments that it has standing to pursue this matter notwithstanding plain requirements in the SOW. In its response and opposition to the government's motion, Veterans Electric argues that it had a substantial chance of being awarded the Nurse Call Contract because "[c]ontractors routinely meet certification requirements by utilizing subcontractors, and absent an express prohibition [in the RFQ], the ability to meet qualification requirements by using subcontractors is implied." Pl. Resp. at 4. And so, Veterans Electric maintains that it is qualified to compete for this contract because it

would have been able to demonstrate the ability to meet the solicitation's contractor qualifications by retaining MasterCom as a subcontractor. *Id.*; Pl. Mot. at 8-9 (citing *Magnum Prods., Inc.; Amida Indus., Inc.*, B-277917, et al., 97-2 CPD ¶ 160 (Comp. Gen. Dec. 8, 1997)).[3]

A careful reading of the SOW for the Nurse Call Contract shows, however, that Veterans Electric—rather than a subcontractor—must satisfy the requirement to have been an authorized ASCOM distributor and service organization for a minimum of three years. *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996) (explaining that the Court's interpretation of a contract begins with its plain language and that unambiguous provisions of a contract must be given their plain and ordinary meaning). In this regard, the SOW provides that "[t]he *Contractor* shall submit certified documentation that *they* have been an authorized distributor and service organization for the Original Equipment Manufacturer (OEM) for a minimum of three (3) years." AR Tab 6 at 88 (emphasis supplied). As the government correctly observes in its reply brief, this Court has recognized that the term "contractor," as defined in the Contract Disputes Act means, "a party to a Government contract other than the Government." *Johnson Controls World Servs., Inc. v. United States*, 44 Fed. Cl. 334, 340 (1999); 41 U.S.C. § 7101(7); *see also* Def. Reply at 3; AR Tab 2 at 6, 11 (incorporating 48 C.F.R. § 52.212-4); AR Tab 3 at 41, 46 (incorporating 48 C.F.R. § 52.212-4). And so, the Court reads the plain terms of the SOW for the Nurse Call Contract to require that Veterans Electric—as the prospective other party to the Nurse Call Contract—meet the solicitation's contractor qualifications. AR Tab 6 at 88; *see* AR Tab 2 at 6, 11; AR Tab 3 at 41, 46.

Veterans Electric's argument that it is qualified to compete for the Nurse Call Contract, because the SOW does not require that it submit certified documentation regarding its qualifications as an ASCOM distributor and service organization until ten days after contract award, is equally unavailing. Pl. Resp. at 4-6. While Veterans Electric correctly observes that the SOW provides that the documentation to support this contractor qualification is to be

---

[3] Veterans Electric points to no language in the RFQ to show that the term "contractor" should be read to include subcontractors. *See generally* Pl. Mot.; Pl. Resp. In addition, Veterans Electric's reliance upon the GAO's decision in *Magnum Products, Inc.; Amida Industries, Inc.* is also misplaced. *See* Pl. Mot. at 9. In that case, the GAO recognized that, as a general rule, the experience of a technically qualified subcontractor may be used to satisfy the experience requirements for a prospective prime contractor, absent language to the contrary in the solicitation. *Magnum Prods., Inc.; Amida Indus., Inc.*, B-277917, et al., 97-2 CPD ¶ 160, at *5 (Comp. Gen. Dec. 8, 1997). But, in this case, the SOW makes clear that the contractor must meet the RFQ's requirements regarding contractor qualifications. AR Tab 6 at 88.

provided as part of the contractor's technical submission following contract award, Veterans Electric fails to explain how the timing of this submission relieves it of the obligation to meet all of the RFQ's requirements. AR Tab 6 at 91; Pl. Resp. at 4-6. Indeed, as the government observes in its reply brief, Veterans Electric's failure to immediately disclose that it does not meet the RFQ's contractor qualifications "merely delayed its unavoidable elimination" from the competition for the Nurse Call Contract. Def. Reply at 3.

Because Veterans Electric has not met its burden to show that it has standing to bring this bid protest action, the Court must dismiss this matter for lack of subject-matter jurisdiction. RCFC 12(b)(1).

### B. Veterans Electric Waived Its Challenge To The Terms Of The Solicitation

To the extent that Veterans Electric seeks to challenge the RFQ's requirement that a qualified contractor be an authorized distributor and service organization for ASCOM for a minimum of three years, the Court must also dismiss this matter because Veterans Electric has waived this claim. *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1315 (Fed. Cir. 2007); *see also* Pl. Mot. at 23; Def. Mot. at 14-15. Veterans Electric's argument that it has standing to bring this action reflects, at bottom, a disagreement with the VA about how to interpret the language in the SOW regarding the solicitation's contractor qualifications. AR Tab 6 at 88. There is no dispute that Veterans Electric did not raise any concerns about this language prior to submitting its quote and the close of the bidding process for the original solicitation for the Nurse Call Contract. Def. Mot. at 14-15; Pl. Resp. at 1; *see generally* AR. Because Veterans Electric failed to challenge the terms of the solicitation in this regard before submitting its quote, Veterans Electric has waived this claim. *Blue & Gold*, 492 F.3d at 1313-15; RCFC 12(b)(1).[4]

### C. Veterans Electric Is Not Entitled To Injunctive Relief

As a final matter, Veterans Electric has not established that it is entitled to the injunctive relief that it seeks in this matter. In its motions for a preliminary injunction and a temporary restraining order, Veterans Electric requests that the Court, among other things, enjoin the VA from any further procurement activity related to the solicitation and award of the Nurse Call

---

[4] Because Veterans Electric has not established standing, the Court does not reach the merits of the parties' remaining arguments set forth in their cross-motions for judgment upon the administrative record.

15

Contract. But, as discussed above, Veterans Electric has not shown that it has standing to pursue its claims. Given this, Veterans Electric cannot succeeded upon the merits of any of its claims. And so, the Court must deny Veterans Electric's motions for injunctive relief. *Argencord Mach. & Equip., Inc. v. United States*, 68 Fed. Cl. 167, 176 (2005) (holding that a plaintiff that has not actually succeeded upon the merits of its claim cannot prevail upon a motion for injunctive relief).

V.  **CONCLUSION**

In sum, the record evidence in this matter shows that Veterans Electric lacks standing to pursue this bid protest matter and that Veterans Electric has waived any challenge to the terms of the solicitation for the Nurse Call Contract. And so, the Court does not possesses subject-matter jurisdiction to consider any of Veterans Electric's claims.

Because the Court does not possess subject-matter jurisdiction to consider this matter, the Court must deny Veterans Electric's requests for injunctive relief. And so, for the foregoing reasons, the Court:

1. **GRANTS** the government's motion to dismiss;
2. **DENIES** as moot the parties' cross-motions for judgment upon the administrative record;
3. **DENIES** Veterans Electric's motions for a temporary restraining order and for a preliminary injunction; and
4. **DISMISSES** the complaint.

Judgment shall be entered accordingly.

Each party shall bear its own costs.

Some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Order entered in this matter on May 11, 2018. This Memorandum Opinion and Order shall therefore be filed **UNDER SEAL**. The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted in accordance with the terms of the Protective Order prior to publication. The parties shall **FILE** a joint status report identifying the information, if any, that

they contend should be redacted, together with an explanation of the basis for each proposed redaction, on or before **August 10, 2018**.

    **IT IS SO ORDERED.**

    s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge